UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSUE VEGA, on behalf of himself and others :
similarly-situated,

             :

         Plaintiff,

             :

    -against-            REPORT AND RECOMMENDATION

             :

TRINITY REALTY CORP., JOSEPH PHAN,   14-CV-7417 (RJS)(KNF)
and PHILIP PHAN, in their individual and   :
professional capacities,

             :

        Defendants.
------------------------------------------------------------X



KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD J. SULLIVAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

    Joseu Vega ("Vega") commenced this action alleging unpaid wages and overtime compensation against Trinity Realty Corp., Joseph Phan and Philip Phan, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and New York Labor Law ("NYLL"). Vega alleges that he worked for the defendants "as a superintendent and/or laborer performing maintenance work and repairs in Defendants' buildings from September of 2012 until his termination in December of 2013." In his complaint, Vega seeks damages, liquidated damages, interest and costs, based on the following claims: (a) unpaid minimum wage and overtime compensation under FLSA and NYLL; and (b) failure to furnish proper wage statements. Vega did not serve Joseph Phan with the summons and complaint. On March 6, 2 015, your Honor issued an order finding Philip Phan and Trinity Realty Corp. liable based on their failure to appear in the action and referred the instant matter to the undersigned "for an inquest on

damages, consistent with the reasoning of *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572 (S.D.N.Y. 2013) (Gardephe, J.), and *Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) (Lynch, J.)." Before the Court are Vega's unopposed inquest submissions.

## PLAINTIFF'S INQUEST SUBMISSIONS

Vega seeks the following: (1) "actual damages under the FLSA and NYLL in the amount of $106,036.88 (or, alternatively, $65,215.12 for day and evening hours only)"; (2) "liquidated damages under the FLSA in the amount of $106,036.88 (or, alternatively, $65,215.12 for day and evening hours only)"; (3) "liquidated damages under the NYLL in the amount of $106,036.88 (or, alternatively, $65,215.12 for day and evening hours only)"; (4) "statutory damages under the NYLL in the amount of $2,500"; (5) "attorneys' fees under the FLSA and NYLL in the amount of $10,307.50"; (6) "costs under the FLSA and NYLL in the amount of $540.00"; (7) "pre-judgment interest under the NYLL in the amount of $18,520.10 (or, alternatively, $11,388.00 for day and evening hours only"; and (8) "post-judgment interest on all monies due at a daily rate to be determined by the Clerk of the Court until the Dependants comply with the judgment." In support of his request, Vega submitted: (a) a memorandum of law; (b) proposed findings of fact and conclusions of law; (c) a declaration by his attorney, Anthony Malecki ("Malecki"), an associate of Borelli & Associates, P.L.L.C. ("BA"); and (d) Vega's affidavit.

Vega states in his affidavit that he worked as a general contractor for the defendants' two residential apartment buildings, in New York, New York, from September 15, 2012, to December 31, 2013. Vega performed general maintenance duties in the apartments and buildings, ensuring the cleanliness of the common areas of the buildings, responding to tenant complaints and making all necessary repairs. Vega states that, due to the nature of the work, he

2

lived and worked out of one of the defendants' buildings. Vega states that the defendants required him to be available to perform work twenty-four hours each day, seven days per week. The defendants did not provide a set schedule to Vega, but, as noted above, required him to be available to provide service to the tenants at all hours of the day and night, if needed. Typically, Vega worked from 7:30 a.m. to 5:00 p.m., Monday through Saturday and two to three hours on Sundays, taking care of the garbage. Additionally, two to three times per week, Vega was required to work until 7:00 p.m, doing electrical repairs. Vega states that the defendants required him to be on-call the remaining time to take care of the tenants' needs whenever they requested assistance. Vega states that the tenants were instructed to contact him by telephone if he did not answer his door. He asserts that, if he did not respond to the tenants' requests promptly, the defendants would have disciplined him. Vega states that, typically, he was able to sleep eight hours per night. However, approximately three to four times per month, tenants would wake him up in the night with emergencies requiring his attention. Vega was paid $100 per week by check. Vega did not receive wage statements during his employment with the defendants.

Vega contends that he is entitled to minimum wage and overtime compensation for his "daytime" work – 66 hours per week, consisting of: (a) 57 hours per week, for the work he performed from 7:30 a.m. to 5:00 p.m., Monday through Saturday; (b) six hours per week, when he worked until 7:00 p.m.; and (c) three hours he worked on Sundays. Since Vega was paid $100 per week, he asserts that his regular rate of pay was $2.50 per hour. Thus, Vega's uncompensated weekly minimum wage is $190 and weekly overtime compensation, calculated based on one and one-half times the minimum wage, is $282.88, totaling $472.88 per week. Vega seeks $30,737.20, in unpaid daytime wages for 65 weeks.

Vega asserts he is "entitled to unpaid wages for evening hours and sleep time," namely the 102 hours per week that the defendants required him to be on-call. Vega asserts that the defendants did not provide him a specific time — delineated for his personal use — when he could leave the premises. According to Vega, the evening and night hours he claims are compensable because the defendants required him to perform everything in relation to their buildings at all times, 24 hours per day, seven days per week and he was not free to leave the building at any given time without facing discipline. Vega contends that "during the evening hours, when he had periods of inactivity, Defendants engaged him to wait for any tenant problem that may arise." Additionally, the defendants required Vega to be at the premises during the night hours and no other employee existed who could take over Vega's responsibilities. Vega asserts that the defendants did not give him a set schedule within which to perform work, and his on-call hours were solely for the benefit of the defendants. Vega seeks $72,134.40, in overtime compensation for "evening and sleep hours." Alternatively, Vega requests overtime compensation for the evening, non-sleep time portion of the hours he was required to be on-call, namely 46 per week, for a total of $32,531.20.

Vega seeks liquidated damages, under FLSA and NYLL, in the amount of $102,871.60, or, alternatively, $63,268.40, in the event that only daytime and evening hours are found to be compensable, because the defendants' violations were willful. Moreover, Vega seeks $2,500 in statutory damages for the defendants' failure to provide him the required wage statements. Vega also seeks: (i) $10,307.50, in attorneys' fees for 50.8 hours his attorneys expended on this matter; (ii) $540.00, in costs; (iii) $18,520.10, in pre-judgment interest under NYLL, calculated from April 30, 2013, as the midpoint of the relevant period, or, alternatively, $11,388.00, in the

4

event that only daytime and evening hours are found to be compensable; and (iv) post-judgment interest.

Malecki states in his declaration, accompanied by contemporaneous records of the hours worked, that the rates requested for each attorney who worked on this matter are less than the rates that would be requested typically "given the simple nature of the Firm's unopposed work in this case." The following hours and hourly rates are requested: (1) $350, for 2.7 hours by BA's partner Michael J. Borrelli ("Borrelli"); (2) $275, for 3.9 hours by BA's senior counsel Alexander Coleman ("Coleman"); (3) $200, for 39.8 hours by BA's associate Malecki; and (4) $75, for 4.4 hours by BA's paralegal Isaura Collado ("Collado"). Borrelli received a law degree from St. John's University School of Law in 2001. He practiced as an associate at Davis & Hersh, in Hauppauge, New York, Guerico & Guerico, in Fa[r]mingdale, New York, and as General Labor Counsel for a nursing home facility, Flushing Manor Geriatrics, Inc. As an associate in previous law firms, he handled cases for individual plaintiffs as well as union grievances and arbitrations. As general counsel, Borrelli was responsible for general labor and compliance issues and worked with outside labor counsel. In March 2006, Borrelli formed BA. BA maintains a caseload of between 200 and 300 active cases with approximately 100 cases presently in litigation. The majority of BA's clients are individual plaintiff-employees. Borrelli has extensive experience in employment litigation in federal and state court, as well as handling cases before arbitration tribunals and administrative agencies. Borrelli and Coleman oversee all BA's litigation. Borrelli's regular hourly rate is $500, but he seeks $350 here.

Coleman received his law degree from American University, Washington College of Law, in 2008. He completed a one-year clerkship for a state-court judge in Virginia and joined BA in January 2010. Coleman appears extensively in state and federal courts, managing a

complex caseload, mostly in the field of employment discrimination and wage and hour law. Coleman is responsible for drafting and arguing all necessary motions, taking and defending all depositions, conducting necessary evidentiary hearings, negotiating settlements and handling all aspects of trial. In January 2014, Coleman became BA's senior counsel and, in that capacity, he supervises directly all the work of BA's associates. Coleman's regular hourly rate is $400, but he requests $275 here.

Malecki received his law degree from Pepperdine University School of Law, in 2006. Prior to joining BA, in 2013, Malecki worked for a small law firm in Los Angeles, handling all aspects of civil litigation. At BA, Malecki handles a complex caseload of 30 to 40 cases, at any time, primarily in the fields of employment discrimination and wage and hour law disputes. Malecki has the same responsibilities as Coleman. His regular hourly rate is $400, but he requests $200 here. Collado is a bilingual paralegal whose regular hourly rate is $125, but she requests $75 here.

## LEGAL STANDARD

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Id. Rule 55(b)(2) of the Federal Rules of Civil Procedure "leaves the decision of whether a hearing is necessary[, for determining damages,] to the discretion of the district court" and, "as long as it [is] ensured

that there [is] a basis for the damages specified in a default judgment," the court is not required to hold a hearing. <u>Fustok v. Conticommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989).

"Every employer shall pay to each of his employees . . . wages . . . not less than . . . $7.25 an hour." 29 U.S.C. § 206(a)(1). "[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "[T]he regular rate of the employee, as the term is used in the [FLSA], cannot be lower than [an] applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed." 29 C.F.R. § 778.5. "Any employer who violates the provisions of section 206 or section 207 of the [FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages," as well as "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). However,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [an action under FLSA] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

"Liquidated damages under the FLSA are considered compensatory rather than punitive in nature." <u>Reich v. S. New England Telecomms. Corp.</u>, 121 F.3d 58, 71 (2d Cir. 1997).

7

"The basic minimum hourly wage rate shall be . . . $7.25 per hour on and after July 24, 2009" until December 30, 2013.  12 New York Compilation of Codes, Rules and Regulations ("NYCRR") § 142-2.1.  "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to exemptions of sections 7 and 13 of 29 U.S.C. § 201 *et seq.*"  12 NYCRR § 142-2.2. NYLL provides:

> If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due.

NYLL § 663(1).

"[L]iquidated damages under the Labor Law 'constitute a penalty' to deter an employer's willful withholding of wages due."  Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (citation omitted).  "If any employee is not provided a statement or statements as required by subdivision three of section one hundred ninety-five of this article, he or she shall recover in a civil action damages of one hundred dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars."  NYLL § 198(1-d).

Where a plaintiff claims unpaid compensation for "on-call" hours, courts must "determine as a matter of law whether the plaintiff's activities constitute work," and the fact finder must "determine as a question of fact how much of the plaintiff's time was spent within the definition of work and how much of that time was spent with the employer's actual or constructive knowledge."  O'Neill, 968 F. Supp. 2d at 580.

> To avoid liability for on-call hours, an employer must definitely tell the employee in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time during which an employee can leave the job is long enough to enable him to use the time effectively for his own purposes depends upon all the facts and circumstances of the case. When periods of inactivity are unpredictable . . . and usually of short duration, and the employee is unable to use the time effectively for his own purpose, then the employee is engaged to wait, and the inactive time constitutes work time under the FLSA—even if the employee is allowed to leave the premises or the job site during such periods of inactivity. Courts have consistently held that 'on-call' time can constitute work and is compensable under the FLSA where an employer restricts an employee's ability to use time freely for the employee's own benefit.

Id. at 581 (quotation marks, brackets and citations omitted).

> Time that an employee spends waiting for work assignments is compensable if the waiting time is spent primarily for the benefit of the employer and his business. The question of whether time is spent predominantly for the employer's benefit, and therefore constitutes time worked under FLSA, depends upon particular circumstances.

Moon, 248 F. Supp. 2d at 229.

When exercising their discretion to determine the reasonableness of an attorney's fees, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), see Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190, which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186-87 n.3.

A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

## FINDINGS OF FACTS

Vega worked as a general contractor for the defendants' two residential apartment buildings, in New York, New York, from September 15, 2012, to December 31, 2013. Vega performed general maintenance duties, ensuring the cleanliness of the common areas, responding to tenants' complaints and making necessary repairs. Generally, Vega worked 57 hours per week, from 7:30 a.m. to 5:00 p.m., Monday through Saturday. Three times per week, Vega worked until 7:00 p.m. On Sundays, Vega worked three hours, taking care of garbage. Vega worked 66 hours per week for 65 weeks. The defendants did not provide Vega with a specific time when he could leave his work premises for personal reasons. Vega slept eight hours per night. However, four times per month, tenants would awaken him to report emergencies that required his immediate attention. Vega was paid $100 for each week of work. Vega never received any wage statements from the defendants.

## CONCLUSIONS OF LAW

### *Damages*

Vega's regular rate of pay was $2.50 per hour. He is entitled to $190 per week: the difference between the applicable weekly minimum hourly wage rate, $7.25, and his regular

hourly wage rate of $2.50, for 65 weeks. Vega is entitled to overtime compensation for 26 hours per week at the rate of $10.88 per hour, which is one and one-half times the minimum wage. Thus, Vega is entitled to $30,737.20 (66 hours per week for 65 weeks) in damages for work performed from 7:30 a.m. to 5:00 p.m., Monday to Friday, and overtime compensation for hours worked three times per week from 5:00 p.m. to 7:00 p.m. and three hours on Sundays.

Although Vega claimed that the defendants required him "to be on-call to take care of the needs of the tenants whenever they requested assistance" for the remanding 102 hours each week, he stated that he slept eight hours per night, typically, except four times per month, when he was awaken during the night by the tenants requiring his assistance with emergencies. Vega did not explain the nature or the extent of the work that he performed during those emergencies or the number of hours he spent performing such emergency work, if any. Absent any evidence of the number of hours Vega worked during the night, four times per month, ascertaining damages for any such work is impossible.

Moreover, Vega did not state what, if any, work he performed and for how long during the evening hours, after he finished his daily work and before he went to sleep, and he failed to describe the nature, extent or frequency of such work. Although Vega stated that, if he "did not respond to a tenant's request promptly, Defendants would have disciplined me," he did not identify the nature and frequency of the discipline to which he asserts the defendants would have subjected him, and did not state affirmatively that he was subjected to any such discipline because he failed to respond to tenants' requests promptly. Vega's conclusory allegations, without more, that he was on call 24 hours per day, seven days per week, and performed emergency night work four times per month, are not sufficient to establish that he was on call 24 hours per day, seven days per week, notwithstanding that Vega lived in one of the defendants'

two buildings. While the defendants did not provide Vega with a specific time when he could leave his work premises for personal reasons, Vega does not contend that he could not leave the premises or that he performed any work after his daily work was finished and before he went to sleep. Absent any evidence in support of a conclusory assertion that Vega was on call 24 hours per day, seven days per week, the Court cannot conclude that Vega was on call 24 hours per day, seven days per week, awaiting work assignments for the benefit of the defendants. The Court finds that Vega was not on call 24 hours per day, seven days per week; rather, he was "on duty" during the nighttime hours when he was required to answer emergency calls, four times per month. See Moon, 248 F. Supp. 2d at 229-30. However, since Vega did not identify the number of hours he spent on duty performing the nighttime emergency work, he failed to establish, with any certainty, the amount of damages to which he might be entitled. The Court finds that Vega established that he is entitled to $30,737.20 in damages.

***Liquidated Damages***

Vega is entitled to liquidated damages under both, FLSA and NYLL, namely $30,737.20 under FLSA and $30,737.20 under NYLL. Thus, the total liquidated damages are $61,474.40.

***NYLL Statutory Damages***

The defendants have failed to provide wage statements to Vega during his employment. Thus, Vega is entitled to $2,500 in statutory damages. See NYLL § 198(1-d).

***Reasonable Attorneys' Fees and Costs***

Upon review of the attorneys' and paralegal's qualifications, the Court finds that the hourly rates charged are reasonable, namely: (a) $350 by Borrelli; (b) $275 by Coleman; (c) $200 by Malecki; and (d) $75 by Collado. However, the Court's review of counsel's contemporaneous time records indicates a significant number of entries by Borrelli, Coleman

and Malecki described as "review electronic court filing system bounce and contents therein" and "email correspondence with case openings," raising concerns for the Court about the accuracy and reasonableness of the hours reflected in the time records. Entries like those noted above, made by one or more attorneys, appear for the following dates: (i) September 16, November 4, November 18, November 26, December 15, December 24 and December 29, 2014; and (ii) February 13, February 16, February 18, March 6, March 9, April 2, April 23 and April 27, 2015. It is not clear to the Court why the plaintiff's attorneys charged the plaintiff for errors they committed when attempting to file documents electronically, owing to their failure to comply with the court's Electronic Case Filing system rules. It is less clear why all three attorneys, including BA's partner and senior counsel, would spend their time reviewing "electronic case filing system bounce" or conducting "email correspondence with case openings," which are simple and exclusively administrative tasks. The Court is also at a loss concerning the numerous dates on which such activities are claimed to have been performed because the docket sheet, maintained by the Clerk of Court for this action, indicates that electronic filing errors occurred only on September 12, 2014, and February 16 and 18, 2015. The Court notes that the plaintiff was also charged for hours expended on tasks resulting from other errors of his attorneys, such as, for example, improper service, "email correspondence with Isauro Collado, Paralegal, regarding affidavit of service to Trinity," "Telephone conference with Trinity Realty Group regarding improper service," "Telephone conference with Jeanine from Intercounty regarding service of Trinity Realty Corp.," "conference with Isauro Collado, Paralegal, regarding service of defendants" and "email correspondence with secretary regarding affidavit of service." The Court also finds that other administrative tasks were performed by the attorneys that should have been performed by a paralegal, such as, for example, "Research on

13

address of defendants," "Research on additional addresses for defendants" and "Research new addresses for defendants and additional defendants." As the plaintiff acknowledges, this is a simple matter in which the defendants defaulted and no discovery activities occurred. As such, it did not require any particular level of skill to perform the legal services properly, making it unjustified for Borrelli, BA's partner, and Coleman, BA's senior counsel, to spend any time on this action, particularly time working on the same task as Malecki, BA's associate who handled most of the activities in this action. Moreover, Malecki's 39.8 hours appear to be excessive, given the simple nature of the action and the legal services performed in connection with it. The Court finds that 50.8, the total number of hours expended in this action, is not reasonable. Accordingly, the Court finds that a reduction of 30% is warranted, reducing the plaintiff's request of $10,307.50 by 30% or $3,092.25. The Court finds that $7,215.25 represents reasonable attorneys' fees incurred in connection with this action, and $540 represents reasonable costs in this action.

*Interest*

"Interest shall be recovered upon a sum awarded because of . . . an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." New York Civil Practice Law and Rules ("CPLR") § 5001(a). "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR § 5001(b). "Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute." CPLR § 5004.

The Court finds that Vega is entitled to prejudgment interest in accordance with the CPLR, namely nine per centum per annum on $30,737.20, or $2,766.34, from April 30, 2013, the midpoint of the relevant period, to April 30, 2015. Thus, the prejudgment interest is $5,532.68. Vega is also entitled to postjudgment interest, to be calculated pursuant to 28 U.S.C. § 1961.

## RECOMMENDATION

For the foregoing reasons, I recommend that the plaintiff be awarded: (1) $30,737.20, in damages; (2) $61,474.40, in liquidated damages; (3) $2,500, in statutory damages; (4) $7,215.25, in attorneys' fees; (5) $540, in costs; (6) $5,532.68, in prejudgment interest; and (7) post-judgement interest.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, 40 Centre Street, Room 2104, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Sullivan. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and***

*will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

| | |
|---|---|
| Dated:  New York, New York<br>            July 28, 2015 | Respectfully submitted,<br><br>_____<br>KEVIN NATHANIEL FOX<br>UNITED STATES MAGISTRATE JUDGE |