UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSUE VEGA,

                        Plaintiff,

  -v-

TRINITY REALTY CORP. *et al.*,

                        Defendants.

No. 14-cv-7417 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

      Pending before the Court is a motion by Defendants Trinity Realty Corp. and Philip Phan under Federal Rule of Civil Procedure 60(b)(4) to vacate the default judgment entered against them in 2015. (Doc. No. 32; *see also* Doc. Nos. 33–36, 49.) Plaintiff Josue Vega opposes that motion. (Doc. No. 44 ("Vega Opp'n"); *see also* Doc. Nos. 45–46.) For the reasons set forth below, the Court DENIES the motion with respect to Trinity. But as to Philip Phan, the motion raises several issues of disputed fact that must be resolved at an evidentiary hearing.

## I. Background

      Vega initiated this action on September 12, 2014, naming as defendants Trinity Realty Corp., Joseph Phan, and Philip Phan. (Doc. No. 1.) According to the complaint, Joseph and Philip are the chief executive officer and manager, respectively, of Trinity, a New York corporation that owns several residential buildings in New York City. (*Id.* at 3.)[1] Vega claimed that he worked as a general contractor at several of Trinity's building, and that all three of the defendants violated (1) the overtime and minimum wage provisions of the federal Fair Labor Standards Act and the

---

[1] References to page numbers of docket filings correspond to the page numbers provided in the ECF legend atop the filing, not to the filing's own pagination.

New York Labor Law, and (2) the New York Labor Law's requirement that Vega be provided with proper wage statements. (Doc. No. 28 at 1.)

After filing his complaint, Vega spent the next few months attempting to track down and serve the three defendants. The first defendant that Vega located was Philip. According to an affidavit of service, Vega served Philip on October 28, 2014 by leaving the summons and complaint with an individual named "Trends Chung" at a location that Vega believed to be Philip's dwelling. (Doc. No. 3.) The affidavit indicated that the address at which the service took place was 1401 Pelham Parkway East in the Bronx. (*Id.*)

Vega served Trinity a little over a month later.[2] (Doc. No. 7.) Specifically, on December 1, 2014, Vega delivered a copy of the complaint and summons to the New York Secretary of State, which is authorized under New York law to accept service on behalf of Trinity. *See* N.Y. Bus. Corp. Law § 306(b)(1). Following receipt of those documents, the Secretary of State was required to mail them to the address that it had on file for Trinity, *id.*, which is 2340 University Avenue, Apt. 3N in the Bronx (Doc. No. 7 at 2; Doc. No. 49-1 at 1).

Although Vega attempted to serve Joseph, it turned out that Joseph had died several years earlier, making service impossible.[3] (Doc. No. 6 at 2.) So, on December 15, 2014, Vega submitted a letter to the Court explaining that service had been completed on the two remaining defendants ("Defendants") and indicating that Vega would soon be filing a motion for default as neither Trinity nor Philip had filed an appearance in the case. (*Id.* at 1–3.) Nine days later, with

---

[2] Vega had previously served a different entity with a similar name, Trinity Realty Group LLC, by accident. (Doc. No. 4.)

[3] Apparently, since Joseph's death, Philip has controlled the operations of Trinity, though there has not been a formal change in ownership nor have Joseph's shares been transferred to Philip. (Doc. No. 33 ¶ 22.)

2

Defendants still not having appeared, the Clerk of Court issued Certificates of Default against both. (Doc. Nos. 8–9.)

Thereafter, the Court issued an order to show cause as to why a default judgment should not be entered and scheduled a conference for March 6, 2015 (Doc. No. 10), which order was served on Defendants by mail (Doc. No. 12).  When Defendants failed to attend that conference, the Court entered an order finding that Defendants were liable to Vega, and referred the action to the Honorable Kevin Nathaniel Fox, Magistrate Judge, "for an inquest on damages." (Doc. No. 16 at 1–2.)

Judge Fox issued his Report and Recommendation in July 2015.  (Doc. No. 27.)  Four months later, on November 25, 2015, the Court adopted that Report and Recommendation with one minor modification, and ordered that judgment be entered against Defendants for the following sums: "(1) $30,737.20 in damages; (2) $61,474.40 in liquidated damages; (3) $2,500 in statutory damages; (4) $7,215.25 in attorneys' fees; (5) $540 in costs; (6) $7,116.69 in prejudgment interest; and (7) postjudgment interest, to be calculated pursuant to 28 U.S.C. § 1961." (Doc. No. 28 at 4.) The Court also dismissed Joseph from the case as he was deceased and so was not a proper party. (*Id.*)  The Clerk of Court formally entered judgment later that day and the case was terminated. (Doc. No. 29.)  And with that, the case was over.[4]  Or so everyone thought.

On October 20, 2020, nearly five years later, Defendants materialized for the first time, seeking to vacate the default judgment.  (Doc. No. 30 at 2–4.)  As explained by Philip, he initially learned of this action in April 2019, when post-judgment discovery demands were delivered to one of Trinity's buildings.  (Doc. No. 33 ("Philip Decl.") ¶¶ 18–19.)  Unfortunately, Philip apparently

---

[4] An abstract of judgment was issued on August 7, 2017, in favor of Vega and against Trinity and Philip in the amount of $109,583.54.

3

did not understand the import of those documents and believed them to be frivolous. (*Id.*) It was not until some undisclosed later date that he finally realized that Vega had sued him and that a judgment had been entered against both him and Trinity, prompting him and Trinity to seek relief from that final judgment.

Defendants premise their motion on the assertion that Vega did not properly serve them, meaning that the Court's judgment is void for lack of personal jurisdiction and must be vacated under Federal Rule of Procedure 60(b)(4). (Doc. No. 34 ("Defs. Mem.").) With respect to Philip, Defendants argue that the affidavit of service lists Philip's address as 1401 Pelham Parkway East, Bronx, New York – an address that they claim was never Philip's residence and in fact does not even exist. (*Id.* at 12; Doc. No. 49 ("Reply") at 6; Philip Decl. ¶¶ 7–9.) Philip avers that in October 2014, when service was alleged to have occurred, he was living at 193 10th Avenue in Manhattan. (Philip Decl. ¶ 13.) He further insists that he does not know anyone by the name of "Trends Chung." (Defs. Mem. at 12; Reply at 6; Philip Decl. ¶ 11.)

As for Trinity, Defendants do not dispute that Vega delivered the complaint and summons to the New York Secretary of State. Nevertheless, Defendants claim that Trinity never received actual notice of the action. They explain that while the Secretary of State's files list Trinity's mailing address for service of process as 2340 University Avenue, Apt. 3N, that is incorrect. (Defs. Mem. at 7.) Apparently, while that unit is in a building that Trinity owns, it is a rental property and Trinity has no offices at that location. (Doc No. 30 at 3; Philip Decl. ¶¶ 16, 25–26.) Defendants suggest that perhaps the Secretary of State's files meant to refer to Joseph's old address, 2430 University Avenue, Apt. 3N, since he is still listed as the company's CEO.[5] (Defs.

---

[5] Defendant's only explanation for this error is that the two addresses are quite similar, with the numbers "3" and "4" being transposed between the two. Defendants therefore suggest that "[t]his is an obvious and innocent mistake, either on the part of a defendant (Phillip [*sic*] or Joseph Phan) or the . . . person [in the Secretary of State's office] who entered the information into [the] data base." (Reply at 8.)

4

Mem. at 13; Reply at 8; Doc. No. 30 at 3.) But even if that were the case, and even if the Secretary of State had sent the summons and complaint to this other address, Defendants claim that Trinity still would not have received notice of the case because Joseph was already deceased in 2014. (Defs. Mem. at 13; Philip Decl. ¶ 26.) In other words, Defendants' position is that not a single address on file with the Secretary of State is an address at which Trinity (or its executives) could accept service, and, as a result, Trinity never received notice of the lawsuit.

Vega, naturally, opposes Defendants' motion. Vega begins by explaining that the process server made a typographical error in filling out the original affidavit of service for Philip. (Vega Opp'n at 8.) While the original affidavit stated that service occurred at 1401 Pelham Parkway *East* (an address that does not exist), service actually took place at 1401 Pelham Parkway *North*. (*Id.* at 7–8, 14–15.) To support this claim, Vega submits both an amended affidavit of service reflecting the correct address and a GPS stamped photograph that the process server took back in 2014. (Doc. No. 45-4.) As for whether Philip knows "Trends Chung," Vega's amended affidavit clarifies that Chung held himself out as Philip's family member. (Vega Opp'n at 8; Doc. No. 45-4 at 2.) Finally, Vega submits his own affidavit, indicating that he had previously accompanied Philip to that 1401 Pelham Parkway North location, and that Philip had at one point "referred to it as his home." (Doc. No. 46 ¶ 2.)

As for Trinity, while Vega does not dispute Defendants' assertion that the Secretary of State's file is inaccurate, he says that this error is immaterial. According to Vega, under New York law, service occurred as soon as he delivered the complaint and summons to the Secretary of State and anything that occurred after that point is irrelevant to the question of whether the Court obtained personal jurisdiction over Trinity. (Vega Opp'n at 12–14.) Moreover, Vega asserts that

it was Trinity's responsibility to ensure that the Secretary of State's records are accurate and up to date. (*Id.* at 13–14.)

## II. Applicable Law

When a party fails to defend an action, Federal Rule of Civil Procedure 55 permits either the clerk of court or the district court to enter a default against that party. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). If, following the entry of that default, the court determines that the plaintiff's allegations establish that the defendant is liable as a matter of law and that the plaintiff is entitled to damages as a result, the court may enter a final default judgment. *Id.* at 128–29, 137 & n.23; *see also Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

While Rule 55(c) permits defendants to seek relief from a default, the rule differentiates between vacating the entry of a default and vacating a final default judgment. The former may be set aside merely for "good cause." Fed. R. Civ. P. 55(c). Setting aside a final default judgment, however, is a more challenging task. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

Like any other final judgment, a default judgment is subject to modification only if one of the six reasons set forth in Rule 60(b) is met:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

   (6)  any other reason that justifies relief.

Fed. R. Civ. P. 60(b); *see also* Fed. R. Civ. P. 55(c) (cross-referencing Rule 60(b)).

  In this case, Defendants point to Rule 60(b)(4), arguing that the default judgment is void because Vega never properly served them with a summons or complaint. (Defs. Mem. at 8.) At its core, then, Defendants' argument is that the default judgment is invalid because the Court lacked personal jurisdiction over them. *See "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 122–23 (2d Cir. 2008) (explaining that a lack of personal jurisdiction presents grounds for vacatur under Rule 60(b)(4)); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (making clear that a federal court may lawfully exercise personal jurisdiction over a defendant only if the plaintiff's service of process upon the defendant was procedurally proper). "In the context of a Rule 60(b)(4) motion, a judgment may be declared void for want of jurisdiction only when the court 'plainly usurped jurisdiction,' or, put somewhat differently, when 'there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction.'" *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)).

  Voidness is "unique" among the six reasons for vacating a judgment under Rule 60(b). *Irvin v. Harris*, 944 F.3d 63, 68 (2d Cir. 2019) (quoting *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 733 n.3 (2d Cir. 1980)). The reason being, while relief under most provisions of Rule 60(b) is discretionary, relief under Rule 60(b)(4) is mandatory. *See id.*; *see also Mickalis Pawn Shop*, 645 F.3d at 139 (explaining that while the Second Circuit "generally review[s] motions pursuant to the provisions of Rule 60(b) for abuse of discretion, [it] review[s] *de novo* a district court's denial of a Rule 60(b)(4) motion" (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005))). Put simply: "[e]ither a judgment is void or it is valid." 11 Charles Alan

7

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2862 (3d ed.) (hereinafter, "Wright & Miller").

Consistent with that fact, a motion for relief under Rule 60(b)(4) may often be brought long after other Rule 60(b) motions would be untimely. "In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void 'may be made at any time.'" *"R" Best Produce*, 540 F.3d at 124 (2d Cir. 2008) (quoting *Beller & Keller v. Tyler*, 120 F.3d 21, 24 (2d Cir. 1997)); *see also Cent. Vt. Pub. Serv.*, 341 F.3d at 189 (concluding that a motion seeking to vacate a judgment based on a lack of subject-matter jurisdiction was timely four years later); *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963) (vacating judgment as void 30 years after entry); Wright & Miller § 2862 (stating that, as a practical matter, "there is no time limit on an attack on a judgment as void").[6]

### III. Discussion

The Federal Rules of Civil Procedure provide that a plaintiff may serve a summons and complaint on a defendant pursuant to the law of the state in which the district court is located. *See* Fed. R. Civ. P. 4(e)(1) (individual within a judicial district of the United States); *see also* Fed. R. Civ. P. 4(h)(1) (cross-referencing Rule 4(e)(1) for corporate defendants). In this case, that means the laws of New York.

"Normally, a plaintiff has the burden of proving personal jurisdiction in a case where a defendant appears and contests such jurisdiction."[7] *"R" Best Produce*, 540 F.3d at 126. "In New

---

[6] Technically, however, Rule 60(c)(1) requires such motions to be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

[7] The exception to this rule is cases in which the defendant "had notice of the original lawsuit." *"R" Best Produce*, 540 F.3d at 126 (explaining that "a defaulting defendant with notice of the action should bear the risk of non-persuasion on this issue since [the defendant] will normally have greater access to relevant evidence often difficult to assemble after the passage of time"). That is not applicable here, however, because Vega has made no arguments nor presented any evidence to suggest that Defendants had actual notice of the action back in 2014 or 2015.

8

York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [the court] presume[s] that [the defendant] was properly served with the complaint." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (citing *Nyctl 1997-1 Tr. v. Nillas*, 732 N.Y.S.2d 872, 873 (2d Dep't 2001)). "A defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Id.* "But no hearing is required where the defendant fails to swear to specific facts to rebut the statements in the process server's affidavits." *Id.* at 58 (internal quotation marks omitted).

### A.  Trinity Realty Corp.

In 2014, Vega submitted an affidavit indicating that he served Trinity by delivering the summons and complaint to the New York Secretary of State. (Doc. No. 7.) Under New York law, that is all that is needed to permit a court to exercise personal jurisdiction over a corporation. *See* N.Y. Bus. Corp. Law § 306(b)(1); *see also Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 254–55 (2d Cir. 1995). Trinity does not dispute Vega's account. Rather, Trinity argues that its address on file with the Secretary of State is wrong, meaning that it never received actual notice of the action. Trinity chalks this discrepancy up to an innocent mistake, and argues that, absent any willful action on its part, the Court should vacate the judgment. (Reply at 7–8.) The Court disagrees.

When confronted with a motion under Rule 60(b)(4), a district court must answer only one question: whether the judgment is void. *See Irvin*, 944 F.3d at 68. In this case, the answer to that question hinges exclusively on whether the Court had personal jurisdiction over Trinity. And under New York Business Corporation Law § 306(b)(1) and Federal Rule of Civil Procedure 4(h)(1), the answer to that question is clearly "yes."

9

Service was complete (and thus personal jurisdiction attached) when Vega delivered the complaint and summons to the Secretary of State. *See* N.Y. Bus. Corp. Law § 306(b)(1) (stating that "[s]ervice of process on [a] corporation shall be complete when the secretary of state is so served"). That remained true regardless of whether Trinity received actual notice of the lawsuit. *See, e.g.*, *Eugene Di Lorenzo, Inc. v. A.C. Dutton Lumber Co.*, 67 N.Y.2d 138, 140–42 (1986); *Fisher v. Lewis Constr. NYC Inc.*, 117 N.Y.S.3d 29, 30 (1st Dep't 2020) (holding that "[s]ervice of process was complete when plaintiff served the Secretary of State, irrespective of whether the process subsequently reached the corporate defendant" (internal quotation marks, citations, and brackets omitted)); *NYCTL 2013-A Tr. v. Heights Houses Corp.*, 98 N.Y.S.3d 460, 461 (2d Dep't 2019); *Li Fen Li v. Cannon Co.*, 63 N.Y.S.3d 702, 703 (2d Dep't 2017); *J & S Const. of NY, Inc. v. 321 Bowery LLC*, 835 N.Y.S.2d 65, 65 (1st Dep't 2007). As a result, the judgment is valid, and Trinity is entitled to no relief under Rule 60(b)(4). *See Bergman v. Kids by the Bunch Too, Ltd.*, No. 14-cv-5005 (DRH) (SIL), 2018 WL 1402249, at *4–5 (E.D.N.Y. Feb. 16, 2018) (denying relief under Rule 60(b)(4) because service was made on a corporation pursuant to New York Business Corporation Law § 306(b)(1), without considering whether the defendant received actual notice), *adopted*, 2018 WL 1401324 (E.D.N.Y. Mar. 20, 2018); *Trs. of Loc. 531 Pension Fund v. Am. Indus. Gases, Inc.*, 708 F. Supp. 2d 272, 276 (E.D.N.Y. 2010) (explaining that a "lack of actual notice[] . . . does not change the fact that process was proper and complete, and that it conferred personal jurisdiction of this [c]ourt over [the defendant] in this case"); *Briggs Ave. LLC v. Ins. Corp. of Hannover*, No. 05-cv-4212 (GEL), 2006 WL 1517606, at *5 (S.D.N.Y. May 31, 2006) (concluding that "service of process on a corporation is deemed complete when the Secretary of State is served, regardless of whether such process ultimately reaches the corporate defendant" (internal quotation marks omitted)), *aff'd*, 550 F.3d 246 (2d Cir. 2008); *I.L.G.W.U. Nat'l Ret. Fund*

*v. Meredith Grey, Inc.*, 986 F. Supp. 816, 819–21, 825 (S.D.N.Y. 1997) (refusing to vacate a judgment under Rule 60(b)(4) because service was properly effected on the corporation through the Secretary of State).

Of course, Trinity is correct that before denying a motion to vacate a default judgment, courts within this Circuit often consider whether the defendant's conduct was willful. That assessment is the result of a three-part test applicable to most motions for relief under Rule 55(c) and Rule 60(b), which requires courts to consider "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *See Bricklayers & Allied Craftworkers*, 779 F.3d at 186 (quoting *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)); *see also State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166–67 (2d Cir. 2004).[8] The problem for Trinity, however, is that this three-prong test is not applicable to motions made under Rule 60(b)(4).

As discussed above, motions to vacate a judgment for voidness are "unique" because they present a question of law, and the choice to grant relief is not left to the district court's discretion – either the judgment is void or it is not. *Irvin*, 944 F.3d at 68 (internal quotation marks omitted). Consistent with that fact, courts have made clear that these three prudential factors are not relevant to such motions. *See, e.g.*, *id.* (explaining that a meritorious defense is not necessary under Rule 60(b)(4)); *Doe v. Constant*, 354 F. App'x 543, 546 (2d Cir. 2009) (denying a request to vacate a default judgment for lack of personal jurisdiction without considering these factors); *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17-cv-5553 (LGS) (GWG), 2020 WL 4497160, at *5 (S.D.N.Y. Aug. 5, 2020), *adopted*, 2020 WL 7093592 (S.D.N.Y. Dec. 4, 2020),

---

[8] Although these elements are the same regardless of whether the motion is seeking to vacate an entry of a default under Rule 55(c) or a final judgment under Rule 60(b), "courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action." *Enron Oil*, 10 F.3d at 96 (internal citation omitted).

11

*appeal docketed*, No. 21-150 (Jan. 26, 2021); *Bergman*, 2018 WL 1402249, at *4–5 (concluding that vacatur under Rule 60(b)(4) was not appropriate, even though the defendant's conduct was not willful); *Glob. Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013) (noting that this three-factor test applies "outside the context of Rule 60(b)(4)"), *aff'd in part & modified in part*, 612 F. App'x 11 (2d Cir. 2015); *Dichiara v. Pelsinger*, No. 08-cv-1038 (CSH), 2010 WL 3613798, at *6 (D. Conn. Aug. 30, 2010) (assessing the three equitable factors in reference only to Rule 60(b)(1)); *I.L.G.W.U. Nat'l Ret. Fund.*, 986 F. Supp. at 819–21, 825 (same); *Leab v. Streit*, 584 F. Supp. 748, 762 (S.D.N.Y. 1984) (holding that "in spite of defendant's willful failure to defend this action, the default judgment will be vacated pursuant to Rule 60(b)(4)"). That this test is inapplicable to motions under Rule 60(b)(4) is further confirmed by the fact that denials of such motions are reviewed *de novo*, *see Irvin*, 944 F.3d at 68, whereas a district court's assessment of the three prudential factors is reviewed only for abuse of discretion, *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

While Trinity identifies a handful of cases that it says support its position that a judgment *must* be vacated absent willful conduct on the defendant's part (Reply at 7), none is relevant here. Most of those cases concern motions filed under Rule 60(b)(1) or (b)(6), not Rule 60(b)(4). *See Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996); *United States v. Cirami*, 535 F.2d 736, 737–38 (2d Cir. 1976); *Yoram Sholevich Ltd. v. Marcotex Int'l, Inc.*, No. 92-cv-8200 (JFK), 1993 WL 60711, at *1 (S.D.N.Y. Feb. 26, 1993); *Bangkok Bank Ltd. v. Wallant Int'l Trade, Inc.*, No. 88-cv-2675 (JFK), 1989 WL 156299, at *1 (S.D.N.Y. Dec. 18, 1989). The question before those courts was therefore whether an excusable mistake or any other reason justified relieving the defendant from the judgment, s*ee* Fed. R. Civ. P. 60(b)(1), (6), a decision which naturally requires considering the willfulness of the defendant's actions, *New York v. Green*, 420

F.3d 99, 108 n.3 (2d Cir. 2005); *State St. Bank*, 374 F.3d at 166–67.  While Trinity could have sought relief because of a mistake or excusable neglect on its part for having maintained an incorrect address with the Secretary of State, *see, e.g.*, *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12-cv-1674 (RJS), 2013 WL 5405699, at *4 (S.D.N.Y. Sept. 23, 2013); *Capitol Recs., LLC v. Defries*, No. 11-cv-6808 (PKC), 2013 WL 3055322, at *4 (S.D.N.Y. June 14, 2013), the deadline to file such a motion passed long ago, *see* Fed. R. Civ. P. 60(c)(1) (explaining that motions under Rule 60(b)(1) must be filed "no more than a year after the entry of the judgment").  As for the other cases Trinity cites, they concerned defendants seeking only to vacate an entry of default, not a default judgment.  *See Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 241, 243–44 (2d Cir. 1994) (considering a motion that was filed by the defendant under Rule 55 prior to the district court entering a default judgment, rather than a motion under Rule 60(b)); *Robinson v. Worldwide Mgmt. Servs., Inc.*, No. 92-cv-182, 1993 WL 367081, at *1–2 (N.D.N.Y. 1993).[9]

Accordingly, the willfulness of Trinity's conduct is not relevant to the legal determination of whether the Court had personal jurisdiction over the company.  And because Vega complied with the rules concerning the service of process on a corporate defendant in New York State, the default judgment is not void as to Trinity.

But even if the willfulness of Trinity's conduct were relevant to this question, the Court would still deny Trinity's motion.  Under New York law, "it is a corporation's obligation to keep on file with the Secretary of State the current address of an agent to receive service of process." *FedEx TechConnect*, 2013 WL 5405699, at *4 (quoting *Cedeno v. Wimbledon Bldg. Corp.*, 615 N.Y.S.2d 40, 40 (1st Dep't 1994)); *see also id.* at *5 (describing this obligation as "clear and

---

[9] Trinity also cites *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir. 1980), but that case is wholly inapplicable as it concerned a motion to dismiss for failure to prosecute under Rule 41(b).

13

unambiguous"). Having accepted the benefits flowing from incorporating under the laws of New York, Trinity was required to "take its obligations seriously." *Id.* at *6.

To be sure, several courts within this Circuit have concluded that the mere failure to update an address with the Secretary of State does not automatically constitute willful behavior. *See id.* at *6 (collecting cases). Here, though, numerous aspects of Trinity's conduct convince the Court that its actions were intentional.

First, Trinity's failure to update its address was not an isolated event. Rather, this has been Trinity's address on file with the New York Secretary of State since March 1995. (Vega Opp'n at 12 n.4.) In other words, Trinity has maintained an incorrect address with the Secretary of State for more than two decades. *See Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 338–39 (S.D.N.Y. 2013) (concluding that a defendant's failure to update an incorrect address for "4 1/2 years" constituted willful behavior). Second, even though Trinity now acknowledges the error, it has taken no steps to correct it – even today, the Secretary of State's website lists the wrong address for the company. Trinity's choice to continue to leave this error unremedied casts into serious doubt its assertion that this was some innocent mistake. (Vega Opp'n at 7 n.4.) Third, even though Joseph died in 2012 and is no longer a proper agent of Trinity (Philip Decl. ¶ 21), he remains the only officer of the company listed in the Secretary of State's files (Doc. No. 49-1 at 1.). As a result, Trinity's file lists the wrong address for the company and no living executives, making Trinity virtually impossible to track down for service of process. To top all that off, Trinity offers no satisfactory explanation for these failings. *See McNulty*, 137 F.3d at 738 (concluding that willfulness may be established where the litigant's conduct was "egregious and was not satisfactorily explained").

Having left plainly incorrect information on file with the Secretary of State for years, and having demonstrated no urgency in fixing the problem, the Court is left to conclude that this was a purposeful attempt by Trinity to avoid receiving service of process. Accordingly, even if Trinity's willfulness were relevant to its Rule 60(b)(4) motion, and it is not, the Court would still deny Trinity's request to vacate the judgment.

**B.     Philip Phan**

Whether Philip was appropriately served is not as easily answered as Trinity. Specifically, there are a few disputed issues of fact that cannot be resolved on the parties' submissions alone. First, the Court is unable to determine whether service of process occurred at Philip's home or dwelling. Although Vega asserts that it did, Philip claims that he was living at a different address in 2014. Second, the parties dispute whether Vega knows a "Trends Chung," which, again, cannot be resolved on the parties' filings. Indeed, even the parties themselves appear to acknowledge that whether Philip was appropriately served requires an evidentiary hearing. (Defs. Mem. at 12, 21; Vega Opp'n at 17; Reply at 6.) Accordingly, the Court will reserve decision on Philip's motion until after that hearing takes place. Of course, at that hearing, Vega and the Court will be free to question Philip under oath about his residence in 2014, as well as his apparently willful failure to correct and update the Secretary of State's records concerning service of process on Trinity. He will also be expected to explain when and how he first came to learn of this action and the default judgment in this case.

## IV.     Conclusion

For the reasons set forth above, Defendants' motion to vacate the default judgment is DENIED with respect to Trinity Realty Corp. As for Philip Phan, however, Defendants' motion raises disputed issues of fact that require a hearing to resolve. Accordingly, the parties shall submit

15

a joint letter within 14 days of this order proposing dates for such a hearing.  In addition, the parties should apprise the Court of whether they believe that an in-person hearing will be necessary or if the hearing can be conducted remotely using Zoom or similar videoconference software.  Finally, the parties' letter should state whether Philip will require an interpreter during that hearing, as he has indicated that English is not his first language.  (Philip Decl. ¶ 19.)  If so, the parties are "reminded that they must provide their own interpreter[]" as "[t]he Court's interpreters are not available in civil matters."  *Gomez v. Lace Ent., Inc.*, No. 15-cv-3326 (CM), 2015 WL 10792012, at *1 (S.D.N.Y. Aug. 6, 2015).

SO ORDERED.

Dated:     February 24, 2021
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation